**ORAL ARGUMENT NOT YET SCHEDULED**
**No. 15-7002**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**B.D., A MINOR, BY AND THROUGH HIS PARENTS AND**
**NEXT FRIENDS, ANNE AND BRANTLEY DAVIS, ET AL., APPELLANTS**
**VS.**
**DISTRICT OF COLUMBIA, APPELLEE**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
No. 1:12-cv-00934-RJL (Leon, Richard J.)

_____

**CORRECTED BRIEF OF AMICI CURIAE CHILDREN'S LAW CENTER**
**AND COUNCIL FOR PARENT ATTORNEYS AND ADVOCATES, INC.**

_____

Melissa Colangelo (D.C. Bar No. 988816)
Allen Snyder (D.C. Circuit No. 21326 and D.C. Bar No. 162818)
Children's Law Center
616 H Street, N.W., Suite 300
Washington, D.C. 20001
Phone: (202) 467-4900 ext. 527
Mcolangelo@childrenslawcenter.org
Asnyder@childrenslawcenter.org
Counsel for Children's Law Center

Jennifer Ancona Semko (D.C. Bar No. 481119)
Erin Maus (I.L. Bar No. 6270237)
Baker & McKenzie LLP
815 Connecticut Ave, N.W. #900
Washington, D.C. 20006
Phone: (202) 835-4250
Erin.Maus@bakermckenzie.com
Jennifer.Semko@bakermckenzie.com
Counsel for Council of Parent Attorneys and Advocates, Inc.

Date: July 14, 2015

1

## <u>RULE 26.1 CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and D.C. Circuit Rule 26.1, amicus curiae Children's Law Center (CLC) certifies that it does not have any outstanding shares or debt securities in the hands of the public. No publicly-held company has a 10% or greater ownership interest in Children's Law Center. CLC is a 501(c)(3) organization with no parent companies or subsidiaries. Amicus curiae Council of Parent Attorneys and Advocates, Inc. (COPAA) also certifies that it does not have any outstanding shares or debt securities in the hands of the public. No publicly-held company has a 10% or greater ownership interest in COPAA. COPAA is a 501(c)(3) organization with no parent companies or subsidiaries.

## <u>STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING</u>

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for amici curiae represent that all parties have consented to the filing of this brief.[1]  Pursuant to D.C. Circuit Rule 29(d), counsel for amici certify that a separate brief is necessary, as no other amicus is addressing the issue of whether federal courts have jurisdiction over suits to enforce Hearing Officer Determinations where parents prevailed and the school system did not appeal, but has not abided by, the decision.

---

[1] Pursuant to Fed. R. App. P. 29(c), amici curiae state that no counsel for a party authored this brief in whole or in part, and no person other than amici curiae or their counsel made a monetary contribution to its preparation or submission.

ii

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

I.  *Parties and Amici*

All parties, intervenors, and amici appearing before the District Court and in this Court are listed in Appellants' brief.

II.  *Rulings Under Review*

References to the rulings at issue appear in Appellants' brief.

III.  *Related Cases*

To the knowledge and understanding of amici curiae, this case has not been previously filed with this Court or any other court, and counsel are aware of no other cases that meet this Court's definition of related.

Dated: July 14, 2015

_____/s/ Melissa Colangelo_____
Melissa Colangelo (D.C. Bar No. 988816)
Children's Law Center
616 H Street, N.W., Suite 300
Washington, D.C. 20001
Phone: (202) 467-4900 ext. 527
Mcolangelo@childrenslawcenter.org
*Counsel for Amicus Children's Law Center*

_____/s/ Allen Snyder_____
Allen Snyder (D.C. Circuit No. 21326 and D.C. Bar No. 162818)
Children's Law Center
616 H Street, N.W., Suite 300
Washington, D.C. 20001
Phone: (202) 467-4900 ext. 584
Asnyder@childrenslawcenter.org
*Counsel for Amicus Children's Law Center*

____/s/ Jennifer Ancona Semko_____
Jennifer Ancona Semko (D.C. Bar No. 481119)
Baker & McKenzie LLP
815 Connecticut Ave, N.W. #900
Washington, D.C. 20006
Phone: (202) 835-4250
Jennifer.Semko@bakermckenzie.com
*Counsel for Amicus Council of Parent Attorneys and Advocates, Inc.*

_____/s/ Erin Maus_____
Erin Maus (I.L. Bar No. 6270237)
Baker & McKenzie LLP
815 Connecticut Ave, N.W. #900
Washington, D.C. 20006
Phone: (202) 835-4250
Erin.Maus@bakermckenzie.com
*Counsel for Amicus Council of Parent Attorneys and Advocates, Inc.*

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**.......................................... **i**

**STATEMENT REGARDING CONSENT TO FILE AND SEPARATE
BRIEFING** ...................................................................................... **i**

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**
…………………………................................................................... **ii**

**TABLE OF AUTHORITIES** ...................................................... **vi**

**I. STATEMENT OF AMICI CURIAE**...................................... **1**

**II. ARGUMENT**.................................................................... **4**

    A. Parents seeking to enforce a favorable HOD in the District of Columbia do not need to exhaust state complaint procedures prior to seeking enforcement in federal court ............................................................. 4

      1. The language of § 1415(i)(2)(A) plainly states that the due process hearing required by subsections (f) and (g) is the only step to be exhausted before a party can file a civil action in federal court .......................... 4

      2. The U.S. Department of Education (DOE) and DC's Office of the State Superintendent of Education (OSSE) have consistently interpreted the state complaint process as separate from the due process hearing procedure ......................................................... 6

      3. The rulings of several circuit courts that have addressed the issue of enforcement of favorable HODs further underscore that the state complaint procedure is not part of the due process hearing system and that parents do not have to exhaust that separate procedure prior to filing suit in federal court ............................................................. 10

      4. The exhaustion of state complaint procedures before bringing actions in federal court to enforce favorable HODs is also logistically impracticable and would unduly delay relief under the IDEA to children with special needs ......................................................... 12

B. Parents who are aggrieved by the school system's failure to comply with a HOD are "parties aggrieved" under the IDEA ..................................... 16

C. In the alternative, if this Court were to hold that parents cannot enforce a favorable HOD in federal courts under the IDEA, then such a hole in the remedial scheme should allow for enforcement under 42 U.S.C. § 1983 19

**III. CONCLUSION**..................................................................................... **23**

**CERTIFICATE OF COMPLIANCE**

**CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES[2]

**Cases**

*Auer v. Robbins*, 519 U.S. 452 (1997) ............................................................. 7

*Bingham v. New Berlin Sch. Dist.*, 550 F. 3d 601 (7th Cir. 2008) ............... 16

*Blackman v. District of Columbia*, 454 F. Supp. 2d 1 (D.D.C. 2006).......... 14

*Blackman v. District of Columbia*, 456 F.3d 167 (D.C. Cir 2006).............. 22

*Blessing v. Freestone*, 520 U.S. 329 (1997) ................................................. 20

*Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).............. 18

*Crocker v. Tennessee Secondary School Athletic Ass'n,* 980 F.2d 382
(6th Cir. 1992) .......................................................................................... 21, 22

*CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076
(D.C. Cir. 2009) .............................................................................................. 6

*Darby v. Cisneros*, 509 U.S. 137 (1993) ........................................................ 6

*D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260
(3d Cir. 2014)............................................................ …10, 11, 12, 17, 18

*Digre v. Roseville Schools Independent Dist. No. 623*, 841 F.2d 245
(8th Cir. 1988)............................................................................................... 21

*Don't Tear It Down v. Pennsylvania Ave. Dev. Corp.*, 642 F.2d 527
(D.C. Cir. 1980) ........................................................................................... 16

*Doucet v. Chilton County Bd. of Educ.*, 65 F. Supp. 2d 1249
(M.D. Ala. 1999)........................................................................................... 16

*Gean v. Hattaway*, 330 F.3d 758 (6th Cir. 2003) ........................................ 22

*Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989).... 20

*Heidemann v. Rother*, 84 F.3d 1021 (8th Cir. 1996) .................................... 21

*Helms v. McDaniel*, 657 F.2d 800 (5th Cir.1981) ........................................ 18

*Honig v. Doe*, 484 U.S. 305 (1988) ............................................................... 5

*King v. Floyd County Bd. Of Educ.*, 228 F.3d 622 (6th Cir. 2000) ............. 19

*Maine v. Thiboutot*, 448 U.S. 1 (1980) ................................................... 19, 20

*Marie O. v. Edgar*, 131 F.3d 610 (7th Cir. 1997)........................................ 21

*Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*,
453 U.S. 1 (1981)........................................................................................... 20

*Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232
(10th Cir. 2009)............................................................................................. 18

*Moore v. District of Columbia*, 907 F.2d 165 (D.C. Cir. 1990) .................. 19

*Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d. Cir. 1987).................................... 20, 21

*Nieves–Marquez v. Puerto Rico*, 353 F.3d 108 (1st Cir. 2003) 10, 17, 18, 20

---

[2]  Authorities upon which we chiefly rely are marked with asterisks.

*Porter v. Bd. of Trustees. of Manhattan Beach Unified Sch. Dist.*,
307 F.3d   1064 (9th Cir. 2002) ............................................................... 11
*Quackenbush v. Johnson City School Dist.*, 716 F.2d 141
(2d Cir. 1983) ........................................................................................ 22
*Quinn v. District of Columbia*, 740 F. Supp. 2d 112 (D.D.C. 2010)........... 17
*Reid v. Board of Educ., Lincolnshire-Prairie View School Dist. 103*,
765 F. Supp. 965 (N.D. Ill. 2008) ...................................................... 23
*Robinson v. Pinderhughes*, 810 F.2d 1270 (4th Cir. 1987) .................... 11, 21
*Schaffer v. Weast*, 546 U.S. 49 (2005)........................................................... 5
*Sellers v. School Bd. of City of Manassas*, *Va.*,
141 F.3d 524 (4th Cir. 1998) ................................................................ 21
*S.G. v. District of Columbia*, 498 F. Supp. 2d 304 (D.D.C. 2007) ................ 6
*Smith v. Robinson*, 468 U.S. 992 (1984)....................................................... 20

## Statutes and Regulations

20 U.S.C. § 1400 ...................................................................... 3, 4, 17
20 U.S.C. § 1412 .............................................................................. 5
*20 U.S.C. § 1415 ................................................4, 5, 11, 12, 16, 17, 19, 22
29 U.S.C. § 701 .................................................................................. 3
42 U.S.C. § 1983 ..................................................... 19, 20, 21, 22, 23
34 C.F.R. § 300.151 .......................................................................... 9
34 C.F.R. § 300.152 ....................................................................... 7, 9
34 C.F.R. § 300.153 .......................................................................... 9
34 C.F.R. § 300.508 .......................................................................... 9
34 C.F.R. § 300.511 .......................................................................... 9
34 C.F.R. § 300.513 .......................................................................... 9
34 C.F.R. § 300.514 .......................................................................... 9
34 C.F.R. § 300.600 .......................................................................... 8

## Other Authorities

*Blackman v. District of Columbia,* Civ. A. Nos. 97-1629 (PLF),
97-2402 (PLF), 2014 WL 7240349 (D.D.C. December 18, 2014).............. 15
*Brief for the United States as Amicus Curiae*, filed in *Porter v.*
*Board of Trustees of Manhattan Beach Sch. Dist.*, 307 F. 3d 1064
(9th Cir. 2002), http://www.justice.gov/crt/about/app/briefs/porter.pdf ........ 7
*Curtis et al. v. District of Columbia et al.*, No. 1:97CV02402, 1997 WL
34647887 (D.D.C. Oct. 16, 1997)................................................................ 14
District of Columbia Formal State Complaint Policy & Procedures (Revised
November 2009), http://osse.dc.gov/publication/specialized-education-state-
complaints-policy-and-procedure .................................................... 9, 10, 13

IDEA Section 618 Data Products: State Level Data Files Dispute Resolution 2012-13, http://www2.ed.gov/programs/osepidea/618-data/state-level-data-files/index.html .......................................................................................... 9

Letter from Office of Special Education Programs to Johnson, 18 Ind. Disab. Educ. L. Rep. 589 (Dec. 4, 1991)........................................... 7

Lewis M. Wasserman, *Delineating Administrative Exhaustion Requirements and Establishing Federal Courts' Jurisdiction Under the Individuals with Disabilities Education Act: Lessons from the Case Law and Proposals for Congressional Action*, 29 J. Nat'l Ass'n Admin. L. Judiciary 349, 383-84 (2009) ............. 12

Office of Dispute Resolution (ODR), Office of the State Superintendent of Education, http://osse.dc.gov/service/office-dispute-resolution-odr ............ 8

Office of Special Education Programs Memorandum 00-20 (July 17, 2000) ........................................................................................ 7

Office of Special Education Programs Memorandum 94-16, 21 Ind. Disab. Educ. L. Rep. 85 (Mar. 22, 1994) .......................................... 7

OSSE's District of Columbia Notice of Procedural Safeguards: Rights of Parents of Students with Disabilities (Revised January 2011) ....... 9

OSSE FY2013 Oversight Responses, http://dccouncil.us/files/performance_oversight/OSSE_FY13_Oversight_Response_-_Including_Attachments.pdf ............................................................. 8, 9, 13

Report of the Monitor for the 2013-2014 School Year, Doc. No. 2496 (filed November 17, 2014).................................................................. 15

Specialized Education State Complaint Fact Sheet, http://osse.dc.gov/publication/specialized-education-state-complaint-fact-sheet .......................................................................................................... 8

## I.     STATEMENT OF AMICI CURIAE

Children's Law Center (CLC) and Council of Parent Attorneys and Advocates, Inc. (COPAA) file this amicus brief with the parties' consent and address only one important issue raised by the pleadings – whether federal courts have jurisdiction over suits to enforce Hearing Officer Determinations ("HODs") where parents and students prevailed ("favorable HODs") and the school system did not appeal the decision.  CLC and COPAA generally support appellants' view on this issue.  However, CLC and COPAA do not specifically express a position on the merits of the factual circumstances in this matter.

**Children's Law Center:** Children's Law Center fights so every child in DC can grow up with a loving family, good health, and a quality education. Judges, pediatricians, and families turn to us to be the voice for children who are abused or neglected, who aren't learning in school, or who have health problems that cannot be solved by medicine alone. With 100 staff and hundreds of pro bono lawyers, we reach 1 out of every 8 children in DC's poorest neighborhoods – more than 5,000 children and families each year. And, we multiply this impact by advocating for city-wide solutions that benefit all children.

As a central part of its work, CLC's attorneys serve as court-appointed guardians *ad litem* to children in DC's abuse and neglect system to ensure that their child clients' rights and physical, emotional, and educational needs are

addressed.  CLC's work further includes providing free legal assistance to relatives or foster parents who wish to obtain custody of children in, or at risk of entering, foster care.  CLC has also created medical-legal partnerships with practices throughout DC, working as part of the clinical treatment team for hundreds of families each year to address non-medical barriers to children's health.  More than half of the children CLC serves each year have special education needs, providing CLC with significant expertise in the area of education.  In fact, CLC's education attorneys use that expertise to secure services and supports necessary to improve educational outcomes for more than 1,500 children annually.

Through years of addressing the health, well-being, and educational needs of children with disabilities and children in or at risk of entering foster care, CLC has developed a comprehensive, on-the-ground understanding of family law generally,[3] and of education law in particular.  CLC's special education experience places it in a unique position to inform this Court about the educational needs of children with disabilities, and CLC files this brief because this case involves an issue that profoundly affects CLC's clients.  This brief describes why legal authorities support amici's position that federal courts have jurisdiction over suits to enforce favorable HODs and why this approach rests on sound policy considerations.

---

[3] CLC attorneys have filed several amicus briefs on its own behalf in the D.C. Court of Appeals, and that court has asked CLC to serve as court-appointed amicus to provide clarity on various family law issues.

**Council of Parent Attorneys and Advocates, Inc.:** COPAA is a nonprofit organization for parents of children with disabilities, their attorneys and advocates. COPAA believes effective educational programs for children with disabilities can only be developed and implemented with collaboration between parents and educators as equal parties. To this end, COPAA does not undertake individual representation for children with disabilities, but provides resources, training, and information for parents, advocates and attorneys to assist in obtaining the free appropriate public education (FAPE) such children are entitled to under the Individuals with Disabilities Act (IDEA), 20 U.S.C. § 1400 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 701 *et seq.* COPAA also engages in legislative advocacy on issues impacting students with disabilities and their families.

COPAA supports the protection of all procedural and substantive rights afforded parents under the IDEA. COPAA writes to urge this Court to follow the plain language of the IDEA in overturning the lower court's finding that it had no jurisdiction to enforce a favorable and final HOD. COPAA brings to this Court the unique perspective of parents and advocates for children with disabilities and their first-hand experiences with the challenges faced by the complexities of special education litigation. Exhausting the detailed due process procedures set forth in the plain language of the IDEA is complex, costly and time-consuming for families

4

of children with disabilities.  The lower court's imposition of an entirely separate and second exhaustion requirement not found in the language of the IDEA simply to enforce a favorable HOD decision obtained after exhausting these complex procedures does nothing to protect children with disabilities or further the purpose of the IDEA.  Rather, it unnecessarily delays the enforcement of the actions deemed by an impartial hearing officer to be necessary to correct a school's failure to provide a child with a FAPE, a key substantive right guaranteed to children with disabilities.  A final and non-appealed order obtained following the exhaustion of the detailed due process scheme set forth in the IDEA should be enforceable according to its terms without any additional delay.  Requiring parents with a favorable HOD to jump through an additional hoop to obtain the relief to which they are entitled is a result that finds no basis in the plain language of the IDEA and is not consistent with the IDEA's overall purpose.

## II.    ARGUMENT

### A.  Parents seeking to enforce a favorable HOD in the District of Columbia do not need to exhaust state complaint procedures prior to seeking enforcement in federal court.

#### 1.  The language of § 1415(i)(2)(A) plainly states that the due process hearing required by subsections (f) and (g) is the only step to be exhausted before a party can file a civil action in federal court.

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, entitles children with disabilities to a "free appropriate public education"

(FAPE). *See* § 1412(a) (establishing right to a FAPE). Originally known as the Education for All Handicapped Children Act (EHA), the law "confers upon disabled students an enforceable substantive right to public education in participating States, and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Honig v. Doe*, 484 U.S. 305, 310 (1988). "The core of the statute[ ] is the cooperative process that it establishes between parents and schools." *Schaffer v. Weast*, 546 U.S. 49, 53 (2005). The law emphasizes parents' involvement in the child's education, and if displeased with the school's actions with respect to the FAPE provision, the IDEA provides parents and children with certain procedural safeguards. *See* § 1415(a).

As part of those safeguards, § 1415(f) of the IDEA requires the state to provide parents with an "impartial due process hearing," and § 1415(g) permits a state to provide a second-tier due process hearing, which DC has not chosen to do. The IDEA further states that "[a]ny party aggrieved by the findings and decision made under subsection (f)… who does not have the right to an appeal under subsection (g) of this section… shall have the right to bring a civil action… in any State court of competent jurisdiction or in a district court of the United States." § 1415(i)(2)(A). Furthermore, § 1415(i)(1)(A) makes clear that any decision made at an impartial due process hearing "shall be final," except where a party appeals it.

Accordingly, there are no further administrative remedies that appellants like those here must pursue prior to filing suit in federal court.[4]

Moreover, since Congress has already identified the exhaustion requirement that must be met prior to a party bringing suit in federal court, no court or agency can add extra requirements. *See CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1078 (D.C. Cir. 2009) ("[W]e acknowledged the holding of *Darby v. Cisneros*, 509 U.S. 137[ ] (1993), that absent a statutory or regulatory requirement, courts have no authority to require parties to exhaust administrative procedures before seeking judicial review."). Thus, the district court here erred in ruling (District Court Order at 8-9) that there were additional administrative remedies that these appellants had to pursue prior to filing suit in federal court.

> **2.  The U.S. Department of Education (DOE) and DC's Office of the State Superintendent of Education (OSSE) have consistently interpreted the state complaint process as separate from the due process hearing procedure.**

The DOE has explained that parents may, but are not required to, use state complaint resolution procedures in addition to the separate due process hearing

---

[4] The lower court cites a district court case, *S.G. v. District of Columbia*, 498 F. Supp. 2d 304, 311 (D.D.C. 2007), which is inapposite to this matter because the plaintiffs there, prior to filing in federal court, did not go through a due process hearing for one of the Individualized Education Programs (IEPs) they complained about, and so the district court ruled it was "without jurisdiction to consider those claims with regard to [that] IEP." *Id.* at 311 ("[Plaintiffs] complain [about the May 2006 IEP but] … acknowledge, *sub silentio*, that these complaints must be taken in the first instance through an administrative due process hearing.").

system. *See* Office of Special Education Programs Memorandum 00-20 (July 17,
2000); Letter from Office of Special Education Programs to Johnson, 18 Ind.
Disab. Educ. L. Rep. 589 (Dec. 4, 1991); Office of Special Education Programs
Memorandum 94-16, 21 Ind. Disab. Educ. L. Rep. 85 (Mar. 22, 1994).

Additionally, the DOE – the federal administrative agency responsible for
interpreting and enforcing the IDEA and issuing related regulations – has already
disagreed with the lower court's interpretation of 34 C.F.R. § 300.152(c)(3) as
setting forth an exhaustion requirement before asking a court to enforce a favorable
HOD. *See Brief for the United States as Amicus Curiae*, filed in *Porter v. Board of
Trustees of Manhattan Beach Sch. Dist.*, 307 F. 3d 1064 (9th Cir. 2002), at 16-17,
http://www.justice.gov/crt/about/app/briefs/porter.pdf ("The Porters also were not
required to exhaust the complaint resolution procedure (CRP) offered by the
California Department of Education before bringing a lawsuit in federal court
alleging a violation of the IDEA. The clear statutory text of the IDEA, consistent
administrative interpretation, and established case law all compel the conclusion
that the district court erred in imposing such an exhaustion requirement."").
Because the DOE is the author of this regulation, the DOE's interpretation of it is
"controlling unless plainly erroneous or inconsistent with the regulation." *Auer v.
Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks and citation omitted).

OSSE, which serves as DC's State Education Agency (SEA), monitors the implementation of the IDEA by all public agencies, including District of Columbia Public Schools (DCPS) and charter schools.  *See* 34 C.F.R. § 300.600.  In its own reference materials, OSSE describes the use of state complaints in the District of Columbia as one of "various Alternative Dispute Resolution (ADR) mechanisms" that assist the SEA to identify and resolve issues and disputes as quickly as possible.  *See* Specialized Education State Complaint Fact Sheet, http://osse.dc.gov/publication/specialized-education-state-complaint-fact-sheet.

Moreover, OSSE acknowledges that the state complaint process is an infrequently utilized subcategory of dispute resolution in DC: "the majority of the District's dispute resolution work is handled by the Student Hearing Office,[5] which is not part of OSSE, but a small portion is handled by OSSE's Monitoring and Compliance unit, which oversees the State complaints process[.]"  *See* OSSE FY2013 Oversight Responses, at 1116, http://dccouncil.us/files/performance_oversight/OSSE_FY13_Oversight_Response _-_Including_Attachments.pdf [hereinafter OSSE FY13 Oversight].[6]  Consistent

---

[5] The Student Hearing Office was recently renamed the Office of Dispute Resolution. *See* Office of Dispute Resolution (ODR), Office of the State Superintendent of Education, http://osse.dc.gov/service/office-dispute-resolution-odr (last visited July 6, 2015).

[6] The most recent reporting data available from 2012-2013 reflects a sharp contrast in volume between the twenty-nine state complaints filed based on alleged violations of Part B of the IDEA and handled by the State Complaints Office, and

with federal regulations and guidance provided by the DOE, OSSE also

distinguishes the due process and state complaint mechanisms in the District as

separate, and not dovetailing, procedures, with different potential parties and

adjudication and decision methods.  OSSE FY13 Oversight at 1118.[7]  OSSE policy

and procedures seem to contemplate that the state complaint process could be

invoked by a complainant seeking to enforce a special education HOD issued

against a public agency or private providers.  *See* District of Columbia Formal

State Complaint Policy & Procedures (Revised November 2009), at 3,

---

the 750 Due Process Complaints filed.  *See* IDEA Section 618 Data Products:
State Level Data Files Dispute Resolution 2012-13,
http://www2.ed.gov/programs/osepidea/618-data/state-level-data-files/index.html
(extraction date June 5, 2014) (last visited July 6, 2015).

[7] *See also* OSSE's District of Columbia Notice of Procedural Safeguards:  Rights
of Parents of Students with Disabilities (Revised January 2011) at 16,
http://osse.dc.gov/sites/default/files/dc/sites/osse/publication/attachments/
ProceduralSafeguardsPartB.pdf (last visited July 6, 2015) [hereinafter OSSE's
Notice of Procedural Safeguards] (difference between due process hearing
complaint and state complaint procedures).  A due process hearing complaint
alleging a violation of Part B of the IDEA and/or DC law regarding special
education, can only be filed by a parent or the local education agency (LEA) (or
the parent's counsel or the LEA's counsel).  And only after an evidentiary hearing
does an impartial hearing officer issue a HOD, which is binding on the parties.  *See*
34 C.F.R. §§ 300.508 (due process complaint), 303.511 (impartial due process
hearing); 303.513 (decision of hearing officer), 300.514 (finality of decision).  By
contrast, anyone (a parent or an organization) can file a state complaint with OSSE,
which then determines whether the complaint shall go forward and, if so,
investigates, and issues a decision without necessarily conducting a hearing.  *See*
34 C.F.R. §§ 300.151-300.153 (state complaint procedures); OSSE Formal State
Complaint Policy & Procedures; *see also* OSSE's Notice of Procedural Safeguards
at 16-17.

http://osse.dc.gov/publication/specialized-education-state-complaints-policy-and-procedure (last visited July 6, 2015) [hereinafter OSSE Formal State Complaint Policy & Procedures].  However, there is no requirement under federal or District law or in OSSE's own policy and procedures pertaining to state complaints that a complainant *must* seek enforcement of a particular HOD through a state complaint (*see supra* pp. 5-8).  Moreover, as discussed *infra* pp.12-15, implementation of any such mandate would be highly impracticable.

> **3.** **The rulings of several circuit courts that have addressed the issue of enforcement of favorable HODs further underscore that the state complaint procedure is not part of the due process hearing system and that parents do not have to exhaust that separate procedure prior to filing suit in federal court.**

Numerous other circuit courts have ruled that after obtaining a favorable HOD, which the school system does not appeal, there are no further steps that parents and students must take prior to filing suit in a federal court to enforce that decision if the school system has not complied with it.  *See D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 274-76 (3d Cir. 2014) (concluding student had exhausted his administrative remedies with respect to claims against school district under IDEA where student received favorable decision from administrative due process hearing under IDEA and neither party sought appeal); *Nieves–Marquez v. Puerto Rico*, 353 F.3d 108, 117-18 (1st Cir. 2003) (rejecting claims that plaintiffs who had not used state complaint process failed to exhaust their administrative remedies);

*Porter v. Bd. of Trustees. of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1069-73 (9th Cir. 2002) (holding that further exhaustion of California's due process procedures enacted to comply with § 1415 of the IDEA would be futile, and that parents were not required to exhaust California's complaint resolution procedures).[8]  As the Third Circuit has summarized, because:

> the [IDEA] clearly states that any decision made at an impartial due process hearing shall be final, except where a party appeals the decision[, and] in situations where neither party appeals, that administrative decision becomes final and binding under the IDEA and, as a result, nothing is left to be exhausted administratively.  As relevant to the instant case, [plaintiffs] received a favorable decision at the administrative level, and neither party sought an appeal thereafter, rendering the hearing officer's decision final and binding under the IDEA. For [plaintiffs], the favorable decision left [them] with nothing to appeal. [They] had, therefore, exhausted [their] remedies as far as the administrative process was concerned. It was error for the District Court to dismiss [plaintiff's] IDEA claim for failure to exhaust administrative remedies.

---

[8] Although as discussed below, *see infra* p. 20, *Robinson v. Pinderhughes*, 810 F.2d 1270 (4th Cir. 1987) interprets "aggrieved party" contrary to the reading that amici urges and that several circuits have adopted, it, like the cases cited above, squarely concludes that appellants such as those here have no further administrative steps to exhaust prior to filing suit in federal court.  *See id.* at 1272 ("The [parents] had exhausted all administrative remedies available to them under the [IDEA]. When the city did not appeal the local decision, it became the final administrative decision of the State.  20 U.S.C. § 1415(e)(1).").

*D.E.*, 765 F.3d at 276 (citations and quotation marks omitted).  Here too, in light of

§§ 1415(f), (g), (i)(1)(A), the district court erred in dismissing appellants' claim to

enforce a favorable HOD for failure to exhaust administrative remedies.[9]

> **4. The exhaustion of state complaint procedures before bringing actions in federal court to enforce favorable HODs is also logistically impracticable and would unduly delay relief under the IDEA to children with special needs.**

As a practical matter, it would be entirely unworkable to mandate an

exhaustion of the state complaint process before any parent can ask a federal court

to enforce a favorable HOD when a school fails to follow it.  Specifically, it would

---

[9] Scholarly articles likewise support this reading of the relevant statutes.  For example, one author explains that:

> School districts and SEAs have sometimes contended that exhaustion of the state complaint [complaint review procedure], in addition to due process, is required before seeking judicial review. Such claims have been fairly uniformly rebuffed by the courts, principally on the ground that Congress did not intend to allow states to add exhaustion requirements not identified in the statute. Thus, parents' use of state complaint procedures/CRP is purely elective, and cannot be used to thwart parental access to the courts once administrative exhaustion is completed or rendered futile or inadequate. Moreover, parents will not be successful where they argue that their use of state complaint procedures, per se, is an adequate substitute for exhaustion of IDEA due process procedures. There may, however, be situations where CRP exhaustion serves as a substitute for due process exhaustion, where resort to due process would be futile or inadequate.

Lewis M. Wasserman, *Delineating Administrative Exhaustion Requirements and Establishing Federal Courts' Jurisdiction Under the Individuals with Disabilities Education Act: Lessons from the Case Law and Proposals for Congressional Action*, 29 J. Nat'l Ass'n Admin. L. Judiciary 349, 383-84 (2009) (internal citations omitted).

be logistically impracticable for OSSE's tiny State Complaint Office (SCO) to engage routinely in such oversight of HODs.  As noted above, *see supra* pp. 8-9, OSSE views such complaints to its office as simply one of "various [ADR] mechanisms," not a formal process designed to enforce administrative orders. Indeed, OSSE has only a few employees that would be expected to address such matters, in addition to all their current duties, if this Court affirms the lower court's decision.[10]  Since affirmance of the decision below could result in numerous new enforcement proceedings added to that office's prior workload, *see infra* note 13, it seems it would be impossible for that office to handle such cases, absent a significant increase in staffing and legislative appropriations.  Moreover, OSSE rules do not provide for any formal adversarial procedures, which due process would presumably require in an enforcement proceeding.[11] Most importantly, as a state-level administrative agency, OSSE's only enforcement mechanism is to issue a corrective action plan; it cannot hold an offending public agency or private provider in contempt of court, or otherwise force compliance with its decisions.

---

[10] For instance, as a part of its Fiscal Year 2013 Oversight Responses to the D.C. Council, OSSE reported that a new State Complaints Manager was at the time yet to be hired, and the normal staffing level for the remainder of the office was only four full-time employees, managed by the Director of Quality Assurance and Monitoring.  *See* OSSE FY13 Oversight at 10.

[11] For example, OSSE issues its decisions based on its internal investigators' work, together with submissions by the parties, but without any fact-finding hearing or right of cross-examination.  *See* OSSE Formal State Complaint Policy & Procedures at 5-7.

*See* OSSE Formal State Complaint Policy & Procedures at 9.  Lastly, the SCO

simply does not have any experience or track record of enforcing HODs.  Indeed,

amicus CLC, which has been handling special education matters since 2003, and

has handled approximately 290 special education matters and has trained and

mentored at least ninety private attorneys in 47 additional cases during fiscal year

2014 alone, has never heard of a case filed with the SCO to enforce a HOD.

In addition, there is a history in the District of Columbia of DCPS not

implementing HODs, which resulted in a multi-year federal class action law suit,

*Blackman-Jones*.[12]  Between 1999 and the closure of the *Jones* portion of the

*Blackman-Jones* case in December 2014, approximately 135 motions for relief to

enforce HODs were referred to a Special Master appointed by the district court in

connection with the litigation, several of which pertained to multiple students such

---

[12] The *Jones* subclass from the *Blackman-Jones* litigation (which originated as the *Curtis* class in an earlier 1997 action) was a group of fourteen children and their parents or advocates who claimed that DCPS failed to provide a FAPE to children based on DCPS's failure to implement fully and timely HODs or settlement agreements (SAs).  *See Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 3 (D.D.C. 2006); Complaint at ¶¶ 20-38, *Curtis et al. v. District of Columbia et al.*, No. 1:97CV02402, 1997 WL 34647887 (D.D.C. Oct. 16, 1997).  A related lawsuit was filed against DCPS by the *Blackman* class, a group of plaintiffs who claimed that DCPS had failed to respond timely to their request for due process hearings.  *See Blackman*, 454 F. Supp. 2d at 2-3.  In May 1998, the district court consolidated the *Curtis* class (now referred to as the *Jones* subclass) with the *Blackman* class to form one class with two subclasses, and the case has been commonly referred to as *Blackman-Jones*.  *See id.* at 3.

that relief was ultimately sought for approximately 180 students.  Some measure of

relief was recommended and granted for approximately 100 students.  *See* U.S.

District Court for the District of Columbia, Civil Docket for Case No. 1:97-cv-

02402-PLF.  Only after fifteen years of litigation did the district court dismiss the

*Jones* portion of the *Blackman-Jones* case when DCPS was finally compliant with

the mandate of the consent decree – meaning DCPS had implemented 90% of all

HODs and settlement agreements (SA).  *See Blackman v. District of Columbia,*

Civ. A. Nos. 97-1629 (PLF), 97-2402 (PLF), 2014 WL 7240349, at * 1 (D.D.C.

December 18, 2014).[13]   The lengthy *Blackman-Jones* litigation and its ultimate

2006 Consent Decree were designed to prevent unnecessary delays in enforcing

students' rights under HODs.  A new requirement from this Court that students

cannot seek enforcement of favorable HODs in federal court without exhausting an

ill-defined and impracticable OSSE process would negate any progress that was

made under *Blackman-Jones* and may return DC to a status quo of delay and non-

enforcement of rights, which can lead to severe, lasting harm to the education of a

---

[13] However, "compliance" still meant that DCPS could fail to comply with up to
10% of HODs and SAs.  By way of illustration, during the 2013-2014 school year,
DCPS could have failed to implement 41 of 412 HODs/SAs and still be in
compliance with the requirements of the 2006 Consent Decree. *See* Report of the
Monitor for the 2013-2014 School Year, Doc. No. 2496, at 8 (filed November 17,
2014), U.S. District Court for the District of Columbia, Civil Docket for Case No.
1:97-cv-02402-PLF.  The tiny group of employees in OSSE's office could not
possibly handle that number of cases (*see supra* p. 12).

child with special needs. *See Doucet v. Chilton County Bd. of Educ.*, 65 F. Supp.

2d 1249, 1258 (M.D. Ala. 1999) (citations omitted) ("The IDEA recognizes that, in

the life of a developing child, lost months, and even lost weeks, can be crippling.

Therefore, parents and guardians cannot be expected to wait months, or even

weeks, for responses and relief from local school boards before taking appropriate

action, including legal action. In IDEA matters, time is of the essence, and the

expected time for action is usually very short."); *Bingham v. New Berlin Sch. Dist.*,

550 F.3d 601, 605 (7th Cir. 2008) ("And of course, if a school district is providing

an inadequate education to any child, time is of the essence.").

### B. Parents who are aggrieved by the school system's failure to comply with a HOD are "parties aggrieved" under the IDEA.

Section 1415(i)(2) provides for a right of "[a]ny party aggrieved by the

findings and decision " of the administrative proceedings to bring a civil action in

state or federal court.  20 U.S.C. § 1415(i)(2).  It makes eminent sense that parents

and students who are aggrieved by the school system's failure to appeal from and

to comply with a favorable HOD are "parties aggrieved" with a cause of action in

federal court, especially since interpreting "aggrieved parties" to exclude such

students would be inconsistent with the IDEA's purpose and intent.  *See Don't

Tear It Down v. Pennsylvania Ave. Dev. Corp.*, 642 F.2d 527, 533 (D.C. Cir. 1980)

("[S]tatutory meaning is of course to be derived, not from the reading of a single

sentence or section, but from consideration of an entire enactment against the

backdrop of its policies and objectives."); *see Quinn v. District of Columbia*, 740

F. Supp. 2d 112, 115 (D.D.C. 2010) ("The IDEA's purpose is 'to ensure that all

children with disabilities have available to them a [FAPE] that emphasizes special

education and related services designed to meet their unique needs....' 20 U.S.C. §

1400(d)(1)(A)."). That is, in light of the IDEA's overall purpose, "Congress could

not have intended to leave plaintiffs without an IDEA statutory remedy when they

succeed before the hearing officer and the school system does not appeal the

administrative decision but simply fails to fulfill a continuing obligation to provide

services." *Nieves–Marquez,* 353 F.3d at 115-16 & n.3 (concluding that despite

"[t]he lack of a clause in IDEA that specifically provides for judicial enforcement

of administrative orders," the term "parties aggrieved" in § 1415(e)(2) includes

plaintiffs "who are aggrieved by the school system's failure ... to comply with the

hearing officer's continuing, valid, and final order"). In other words, "[i]t would

be anomalous indeed to read the IDEA as omitting a judicial remedy where a party

is successful before a hearing officer but the School District refuses to carry out the

decision. That party is as much aggrieved as in the circumstances where the

administrative ruling is adverse. In both cases, the relief sought has not been

realized." *D.E.*, 765 F.3d at 278 (internal quotation marks and citation omitted)

(holding individuals seeking to enforce a favorable HOD are "aggrieved" for

purposes of the IDEA and may properly pursue such claims in court; reversing

18

district court's dismissal of D.E.'s IDEA clams for failure to exhaust administrative remedies); *see also Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1243 (10th Cir. 2009) ("If [the school district] were to fail to conduct the ninth grade IEP and timely acquire any [ ] assistive technology required by that IEP, Ms. Miller could return to court to enforce the awarded relief.").  Indeed, "[i]t cannot be that a court is powerless under IDEA to issue injunctive relief when the school system neither appeals from nor complies with a valid administrative order and its continuing obligations.  That would open a gaping hole in IDEA's coverage.  It would create incentives for school systems to drag out the administrative process, not to appeal administrative orders, not to announce their intentions to refuse to comply with those orders, and generally not to comply."  *Nieves–Marquez,* 353 F.3d at 115-16.[14]

Moreover, other circuit courts that have not directly faced the question of whether the IDEA grants a federal court jurisdiction to enforce a favorable HOD

---

[14] *See also Helms v. McDaniel*, 657 F.2d 800, 805-06 (5th Cir.1981) ("To appoint an officer to conduct the hearing but then to treat his report only as a recommendation violates the Act's requirement that the decision of the hearing officer be final unless appealed….   To safeguard the right to an appropriate education, Congress made [unmistakably] clear that the hearings provided by the Act were to be impartial and result in final decisions. If a state board may, at its discretion, reject the results of this process, the entire system of procedural safeguards is nullified at a single stroke."). *Helms v. McDaniel* is also binding in the Eleventh Circuit.  *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207, 1209 & n.5 (11th Cir. 1981) (adopting as binding precedent all of the pre-September 30, 1981, decisions of Unit B of the former Fifth Circuit).

have still adopted broad readings of "aggrieved party" in analogous situations. *See*

*King v. Floyd County Bd. Of Educ.*, 228 F.3d 622, 625 (6th Cir. 2000) (adopting

reading of "aggrieved party" that allows "prevailing party" at the administrative

level to bring an action for attorneys' fees under § 1415 (i)(3)(3) in federal court).

Indeed, this circuit in particular has already ruled that, as a general matter, a

favorable HOD does not preclude a party from seeking certain types of relief from

federal court. *See Moore v. District of Columbia*, 907 F.2d 165 (D.C. Cir. 1990)

(en banc). In *Moore*, this Court held that attorneys' fees are available through a

federal court action under the IDEA's predecessor statute – including to parties

who prevailed at the administrative level – and it rejected the school system's

argument that the statute "authorizes the recovery of attorney fees only if the

parent *loses* at the administrative level and then successfully challenges the

administrative determination in court." *Id.* at 167 (emphasis in original).

For the reasons set forth above, this Court should now hold that it has

jurisdiction to enforce favorable HODs under the IDEA.

**C. In the alternative, if this Court were to hold that parents cannot enforce a favorable HOD in federal courts under the IDEA, then such a hole in the remedial scheme should allow for enforcement under 42 U.S.C. § 1983.**

42 U.S.C. § 1983 creates a federal cause of action for "the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws[.]" Litigants

may rely on § 1983 to challenge violations of federal statutes. *Maine v. Thiboutot*,

448 U.S. 1, 5-8 (1980).[15]  If this Court holds that district courts can enforce a

favorable HOD under the IDEA, then it does not need to address the question of

enforceability under § 1983.  Such a holding may indicate that the remedial

scheme of the IDEA is sufficiently comprehensive to preclude any type of 42

U.S.C. § 1983 action. *See supra* note 15.  However, if this Court holds that federal

courts cannot enforce a favorable HOD under the IDEA, the resulting gaping hole

in the remedial scheme should allow for a § 1983 action at least in this narrow

circumstance.  In fact, although some circuits have decided that parents in these

situations do not qualify as "aggrieved parties" (with which amici disagree, for the

---

[15] There are exceptions to the availability of § 1983 jurisdiction to enforce federal
statutory violations.  *See Golden State Transit Corp. v. City of Los Angeles*, 493
U.S. 103, 106 (1989); *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).  One is
when a statutory remedial scheme is so comprehensive that there is an implication
that it provides the exclusive remedy, foreclosing all others.  *See Middlesex County
Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19-20 (1981).  The
Supreme Court held that IDEA's predecessor statute, the EHA, created a
comprehensive remedy that barred application of § 1983. *Smith v. Robinson*, 468
U.S. 992, 1009 (1984). But Congress amended the IDEA in 1986 in response to
*Smith*, adding § 1415(f) – now § 1415(l), which provides that "[n]othing in [the
IDEA] shall be construed to restrict or limit the rights, procedures, and remedies
available under ... other Federal laws protecting the rights of children with
disabilities."  Many circuits have read this as overturning *Smith* and allowing
IDEA-based § 1983 claims.  *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 754-55 (2d. Cir.
1987) (collecting cases); *Nieves–Marquez*, 353 F.3d at 116 n.4 (collecting cases).
Given the plain language of the amended statutory text, the timing of the change in
statutory language, and the legislative history accompanying that change (*see
generally Mrs. W.*, 832 F.2d at 755), amici urge that if this Court agrees with the
lower court's reading of the IDEA and so reaches this issue, it should allow actions
under § 1983 for the purpose of enforcing favorable HODs.

reasons above, *see supra* pp. 15-18), the result has not been that the parents cannot bring the claim in federal court.  Rather, such circuits have generally held that enforcement can be achieved under § 1983.

Specifically, several circuit courts have decided that "parents are entitled to bring a § 1983 action based on alleged violations of the [IDEA]. . . ."  *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d. Cir. 1987); *accord Robinson v. Pinderhughes*, 810 F.2d 1270, 1272-75 (4th Cir. 1987) (ruling that parent can move under § 1983 to enforce favorable HOD issued pursuant to EHA that a school district failed to enforce, even though parents did not have a remedy to appeal a favorable HOD under IDEA because they were not "a party aggrieved");[16] *Marie O. v. Edgar*, 131 F.3d 610, 620-21 (7th Cir. 1997) (ruling that § 1983 may be used as a remedy for violations of the IDEA); *Digre v. Roseville Schools Independent Dist. No. 623*, 841 F.2d 245, 249-50 (8th Cir. 1988) (holding that § 1983 action was available to remedy violations of EHA);[17] *Crocker v. Tennessee Secondary School Athletic Ass'n,* 980 F.2d 382, 384-87 (6th Cir. 1992) ("Through § 1983 [plaintiff] was able

---

[16] *Cf. Sellers v. School Bd. of City of Manassas*, *Va.*, 141 F.3d 524, 529, 532 n.6 (4th Cir. 1998) (as a general matter, "parties may not sue under [§] 1983 for an IDEA violation" but distinguishing *Robinson* by explaining that § 1983 *is* available as a remedy for a violation of the IDEA where the school district has "failed to abide by a final administrative order," but not available as a remedy for "the more general denial of a free appropriate public education").

[17] *But cf. Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996) (clarifying that § 1983 cannot be used to seek damages from a violation of IDEA).

to bring an action that might otherwise have been foreclosed.  Section 1983 did not

provide a right to damages where none existed.").[18]  As with the circuits that have

ruled that favorable HODs can be enforced in federal court under the IDEA, the

concern that has underscored the decisions from circuits that adopted the § 1983

approach instead is that "in a statutory scheme such as the [IDEA] where great

emphasis is placed upon procedural safeguards, [courts] must assume that

Congress intended *some kind of relief* when, through school district policy or

misconduct of school officials or both, a [] child [with disabilities] is deprived of

the procedural safeguards guaranteed by § 1415."  *Quackenbush v. Johnson City

School Dist.*, 716 F.2d 141, 147-48 (2d Cir. 1983) (emphasis added) (holding that

parent can seek relief under § 1983 when they are not a "party aggrieved by the

findings and decision" and thus are not "expressly granted any right of judicial

review" under the EHA).[19]

---

[18] *See also Gean v. Hattaway*, 330 F.3d 758, 773 (6th Cir. 2003) ("The plaintiffs'
IDEA claims may be brought either directly under the IDEA's own provisions for
dispute resolution, or, in some circumstances, under 42 U.S.C. § 1983.").

[19] One opinion from this Court appears to have suggested in dicta that a § 1983
action may be the way for parties to enforce favorable HODs in federal court.  *See
Blackman v. District of Columbia*, 456 F.3d 167, 172 n.6 (D.C. Cir 2006)
(describing in dicta how "appellees were either 'prevailing parties' at the
administrative level or had reached private agreements with the DCPS, they had no
IDEA cause of action. . . . They therefore instituted actions against the District
under § 1983 alleging a 'deprivation of ... rights ... secured by the ... laws,' 42
U.S.C. § 1983—to wit, the IDEA's guarantee of the right to a [FAPE].").

Although amici urge that this circuit now join those that have ruled that federal courts have jurisdiction to enforce favorable HODs under the IDEA for the reasons articulated above (*see supra* pp. 4-18) – particularly with respect to why such parents and students do in fact logically qualify as "aggrieved parties" – if this Court were to adopt the approach of those circuits that have ruled that such plaintiffs can only maintain actions under § 1983, the appellants here should be allowed to amend their complaint. *See Reid v. Board of Educ., Lincolnshire-Prairie View School Dist. 103*, 765 F. Supp. 965, 970 (N.D. Ill. 2008) (dismissing IDEA action seeking enforcement of administrative order, but allowing amendment of complaint to seek enforcement of same order pursuant to § 1983).

## III.    CONCLUSION

This Court should overturn the lower court's finding that it had no jurisdiction to enforce a favorable and final HOD.

Dated: July 14, 2015

____/s/ Melissa Colangelo_____
Melissa Colangelo (D.C. Bar No. 988816)
Children's Law Center
616 H Street, N.W., Suite 300
Washington, D.C. 20001
Phone: (202) 467-4900 ext. 527
Mcolangelo@childrenslawcenter.org
*Counsel for Amicus Children's Law Center*

24

_____/s/ Allen Snyder_____
Allen Snyder (D.C. Circuit No. 21326 and D.C. Bar No. 162818)
Children's Law Center
616 H Street, N.W., Suite 300
Washington, D.C. 20001
Phone: (202) 467-4900 ext. 584
Asnyder@childrenslawcenter.org
*Counsel for Amicus Children's Law Center*

___/s/ Jennifer Ancona Semko____
Jennifer Ancona Semko (D.C. Bar No. 481119)
Baker & McKenzie LLP
815 Connecticut Ave, N.W. #900
Washington, D.C. 20006
Phone: (202) 835-4250
Jennifer.Semko@bakermckenzie.com
*Counsel for Amicus Council of Parent Attorneys and Advocates, Inc.*

_____/s/ Erin Maus_____
Erin Maus (I.L. Bar No. 6270237)
Baker & McKenzie LLP
815 Connecticut Ave, N.W. #900
Washington, D.C. 20006
Phone: (202) 835-4250
Erin.Maus@bakermckenzie.com
*Counsel for Amicus Council of Parent Attorneys and Advocates, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this corrected brief complies with the type-volume limitation of Fed. R. App. R. 32(a)(7)(B) because it contains 6,431 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further certify that the attached brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally-spaced typeface using 14-point Times New Roman.

Dated: July 14, 2015

____/s/ Melissa Colangelo_____
Melissa Colangelo (D.C. Bar No. 988816)
Children's Law Center
616 H Street, N.W., Suite 300
Washington, D.C. 20001
Phone: (202) 467-4900 ext. 527
Mcolangelo@childrenslawcenter.org
*Counsel for Amicus Children's Law Center*

_____/s/ Allen Snyder_____
Allen Snyder (D.C. Circuit No. 21326 and D.C. Bar No. 162818)
Children's Law Center
616 H Street, N.W., Suite 300
Washington, D.C. 20001
Phone: (202) 467-4900 ext. 584
Asnyder@childrenslawcenter.org
*Counsel for Amicus Children's Law Center*

___/s/ Jennifer Ancona Semko____
Jennifer Ancona Semko (D.C. Bar No. 481119)
Baker & McKenzie LLP
815 Connecticut Ave, N.W. #900

Washington, D.C. 20006
Phone: (202) 835-4250
Jennifer.Semko@bakermckenzie.com
*Counsel for Amicus Council of Parent Attorneys and Advocates, Inc.*

_____/s/ Erin Maus_____
Erin Maus (I.L. Bar No. 6270237)
Baker & McKenzie LLP
815 Connecticut Ave, N.W. #900
Washington, D.C. 20006
Phone: (202) 835-4250
Erin.Maus@bakermckenzie.com
*Counsel for Amicus Council of Parent Attorneys and Advocates, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 14, 2015, amici curiae filed the foregoing corrected brief

through this Court's CM/ECF system, which will automatically send a notice of

filing to all registered users.  Amici has also served all parties electronically, which

the parties consented to.

Dated:  July 14, 2015

_____/s/ Melissa Colangelo_____
Melissa Colangelo (D.C. Bar No. 988816)
Children's Law Center
616 H Street, N.W., Suite 300
Washington, D.C. 20001
Phone: (202) 467-4900 ext. 527
Mcolangelo@childrenslawcenter.org
*Counsel for Amicus Children's Law Center*

_____/s/ Allen Snyder_____
Allen Snyder (D.C. Circuit No. 21326 and D.C. Bar No. 162818)
Children's Law Center
616 H Street, N.W., Suite 300
Washington, D.C. 20001
Phone: (202) 467-4900 ext. 584
Asnyder@childrenslawcenter.org
*Counsel for Amicus Children's Law Center*

____/s/ Jennifer Ancona Semko_____
Jennifer Ancona Semko (D.C. Bar No. 481119)
Baker & McKenzie LLP
815 Connecticut Ave, N.W. #900
Washington, D.C. 20006
Phone: (202) 835-4250
Jennifer.Semko@bakermckenzie.com
*Counsel for Amicus Council of Parent Attorneys and Advocates, Inc.*

_____/s/ Erin Maus_____
Erin Maus (I.L. Bar No. 6270237)
Baker & McKenzie LLP
815 Connecticut Ave, N.W. #900
Washington, D.C. 20006
Phone: (202) 835-4250
Erin.Maus@bakermckenzie.com
*Counsel for Amicus Council of Parent Attorneys and Advocates, Inc.*